Charles SLUDER and Misty Sluder *v.*
STEAK & ALE of LITTLE ROCK, INC.
d/b/a Bennigan's Grill & Tavern of Texarkana,
and MRS Management Company, LP

03-1138                                                     206 S.W.3d 213

Supreme Court of Arkansas
Opinion delivered March 31, 2005

*Mercy, Carter, Tidwell, L.L.P.*, by: *W. David Carter*, for appellants.

*Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, by: *Jeffery C. Lewis*, for appellees.

Jim Gunter, Justice. This appeal arises from a Miller County Circuit Court's order granting a motion to dismiss filed by appellee, Steak & Ale of Little Rock d/b/a Bennigan's Grill & Tavern of Texarkana and MRS Management Company, LP (jointly "Bennigan's"), pursuant to Ark. R. Civ. P. 12(b)(6) for failure to state facts upon which relief could be granted. Appellants, Charles and Misty Sluder, appeal the trial court's order of dismissal, arguing that the facts alleged in their complaint were sufficient to survive a Rule 12(b)(6) motion. We affirm the trial court's order.

The following facts are alleged in appellants' complaint. On January 24, 2000, appellants were patrons of Bennigan's in Texarkana, and were socializing with a group hosted by Mr. Jon Beck. Mr. Beck was a regular customer at Bennigan's who frequently ran up expensive bar tabs and provided the bartenders with generous gratuities. In exchange for these tips, the bartenders frequently served Mr. Beck and others in his party after they became intoxicated. According to appellants' complaint, on January 24, 2000, the bartenders at Bennigan's served "multiple alcoholic beverages to [appellants] and others in their party" who were "clearly intoxicated" at the time of the sale. Further, they alleged that Bennigan's, by and through their agents and employees, know-

ingly sold alcoholic beverages to Mr. Beck and other members of his party who were clearly intoxicated at the time of the sale and under circumstances where they should have known that individuals in the Beck party were clearly intoxicated at the time of the sale.

After appellants left Mr. Beck's party at Bennigan's, Mr. Sluder drove his vehicle off the road, struck a tree, and was ejected from the vehicle. As a result, Mr. Sluder sustained severe and permanent injuries to his body, and incurred medical expenses in excess of $250,000.00.

On January 23, 2003, appellants filed a negligence action against appellees pursuant to the Arkansas Dramshop Act, codified at Ark. Code Ann. § 16-126-101 *et seq.* (Supp. 2003). In the fourth paragraph of their complaint, appellants averred:

> Bennigan's Grill & Tavern employees owed a duty to [appellants] to exercise reasonable care. Bennigan's Grill & Tavern employees breached that duty by negligently serving several members of the Beck party alcoholic beverages when they were clearly intoxicated and posed a clear danger to themselves and others. As a direct and proximate result of the negligence of Bennigan's Grill & Tavern employees' conduct, Charles Sluder was involved in an automobile accident, which foreseeably and proximately resulted in serious and permanent personal injury to Charles Sluder and resulting damages to himself and Misty Sluder as set forth hereinafter.

Appellants further alleged that Bennigan's knew or should have known that its conduct would result in injury to appellants or others. Appellants requested two-million dollars in damages for Mr. Sluder's medical expenses, future medical expenses, lost wages, lost earning capacity, physical pain, and mental anguish. Mrs. Sluder sought damages for loss of consortium.

On February 19, 2003, appellees filed a motion to dismiss under Ark. R. Civ. P. 12(b)(6), arguing that appellants failed to state a claim upon which relief could be granted. In their brief to support their motion to dismiss, appellees contended that they were not liable for injuries sustained by Bennigan's intoxicated patrons. Appellants responded on July 9, 2003. A hearing on the matter was held before the trial court on July 10, 2003. On July 11, 2003, the trial court granted appellees' motion to dismiss under Ark. R. Civ. P. 12(b)(6). From this order, appellants bring their appeal.

■ We have repeatedly set forth our standard of review for orders of dismissal pursuant to Ark. R. Civ. P. 12(b)(6). *Branscumb v. Freeman*, 360 Ark. 171, 187 S.W.3d 846 (2004). We review a trial court's decision on a motion to dismiss by treating the facts alleged in the complaint as true and by viewing them in the light most favorable to the plaintiff. *Id.* In viewing the facts in the light most favorable to the plaintiff, the facts should be liberally construed in plaintiff's favor. *Id.* Our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. Ark. R. Civ. P. 8(a)(1).

■ Further, we are required to interpret Ark. Code Ann. § 16-126-104. We articulated our rules of statutory construction in *Kyzar v. City of West Memphis*, 360 Ark. 454, 201 S.W.3d 923 (2005), where we stated:

> The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. Where the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. Finally, the ultimate rule of statutory construction is to give effect to the intent of the General Assembly.

*Id.* (citations omitted). With these standards of review in mind, we turn to the merits of appellants' appeal.

For their sole point on appeal, appellants argue that the trial court erred in dismissing their complaint under Ark. R. Civ. P. 12(b)(6). Specifically, appellants contend that their complaint sets forth facts upon which relief can be granted under the Arkansas Dramshop Act. Appellants maintain that they do not assert a typical first-party dramshop case, but rather they argue that Bennigan's sale of alcoholic beverages to Mr. Beck, not Mr. Sluder, resulted in Mr. Sluder's injuries.

In response, appellees argue that the trial court was correct in granting their motion to dismiss because section 16-126-104 does not create a first-party cause of action against an alcoholic retailer, Bennigan's, for the self-inflicted injuries of Mr. Sluder. Appellees further contend that the motion to dismiss should have been

granted because appellants did not allege in their complaint that Mr. Beck was the "clearly intoxicated" person under section 16-126-104 who inflicted Mr. Sluder's injury.

This issue requires our interpretation of Act 1596 of 1999, commonly known as the Dramshop Act, which is found at Ark. Code Ann. § 16-126-101 *et seq*. For years before the codification of these statutes, we declined to recognize dramshop civil liability for service of alcohol to intoxicated adults or minors. *See Carr v. Turner*, 238 Ark. 889, 385 S.W.2d 656 (1965). However, in *Shannon v. Wilson*, 329 Ark. 143, 947 S.W.2d 349 (1997), we modified our common-law rule set forth in *Carr, supra*, and held that a licensed vendor's violation of Ark. Code Ann. § 3-3-202 (Repl. 1996), which prohibited the sale of alcohol to minors, was evidence of negligence to be submitted to a jury. We concluded that the General Assembly had assigned a high duty of care to licensed alcohol vendors. *Id*. The reason that we modified our rule was in response to the legislature's enactment of Ark. Code Ann. § 3-3-202 for the purpose of protecting minors as a special class of citizens. *See Branscumb v. Freeman*, 360 Ark. 171, 187 S.W.3d 846 (2004).

█ Subsequently, in *Jackson v. Cadillac Cowboy*, 337 Ark. 24, 986 S.W.2d 410 (1999) ("*Cadillac Cowboy I*"), we held that alcohol vendors can be held liable for negligence if they sell alcoholic beverages to intoxicated persons who cause injury to third persons. In *Jackson*, appellee, Cadillac Cowboy, through its agents and employees, sold alcoholic beverages at the Sundowners Club to Kevin Holliday, who was intoxicated. He drove himself home, and on the way, struck the vehicle of a third party, James Jackson, and caused Mr. Jackson's death. Pam Jackson, the administratrix of his estate, filed suit against Cadillac Cowboy and its owners. Cadillac Cowboy and its owners moved to dismiss Jackson's complaint under Ark. R. Civ. P. 12(b)(6), and the trial court granted the motion. On appeal, we overruled *Carr, supra*, and its progeny and held that evidence of the sale of alcohol by a licensed vendor to an intoxicated person is some evidence of negligence. We reversed and remanded the case to the trial court. *Id*.

In response to our decision in *Cadillac Cowboy I*, but prior to the trial on remand, the General Assembly passed Act 1596 of 1999. Arkansas Code Annotated § 16-126-101 provides:

> The General Assembly finds and determines that it needs to clarify and establish its legislative intent regarding the sale of alco-

holic beverages as addressed by the Arkansas Supreme Court in *Shannon v. Wilson*, 329 Ark. 143, 947 S.W.2d 349 (1997), and *Jackson v. Cadillac Cowboy, Inc.*, 337 Ark. 24, 986 S.W.2d 410 (1999).

*Id.*

Pursuant to our opinion in *Cadillac Cowboy I*, the case was remanded, and the jury returned a verdict in favor of Ms. Jackson. Cadillac Cowboy appealed, and in *Cadillac Cowboy v. Jackson*, 347 Ark. 963, 69 S.W.3d 383 (2002) ("*Cadillac Cowboy II*"), we held that the law-of-the-case doctrine applied and that the trial court was correct in applying the duty of care that we set forth in *Cadillac Cowboy I*, which was based on statutes that existed at the time of that decision. We concluded that the trial court was bound by our mandate in *Cadillac Cowboy I* and that the newly-enacted Dram-shop Act did not apply. *Id.*

■ Here, unlike the circumstances in *Cadillac Cowboy II*, the 1999 Dramshop Act applies because appellants filed their complaint on January 23, 2003. Thus, we will review the applicability of Ark. Code Ann. § 16-126-104 to the present case.

With our statutory-construction rules in mind, we turn to Ark. Code Ann. § 16-126-104, which involves the imposition of civil liability for the sale of alcohol to a clearly intoxicated person. The statute provides:

> In cases where it has been proven that an alcoholic beverage retailer knowingly sold alcoholic beverages to a person who was clearly intoxicated at the time of such sale or sold under circumstances where the retailer reasonably should have known the person was clearly intoxicated at the time of the sale, a civil jury may determine whether or not the sale constitutes a proximate cause of any subsequent injury to other persons. For purposes of this section, a person is considered clearly intoxicated when the person is so obviously intoxicated to the extent that, at the time of such sale, he presents a clear danger to others. It shall be an affirmative defense to civil liability under this section that an alcoholic beverage retailer had a reasonable belief that the person was not clearly intoxicated at the time of such sale or that the person would not be operating a motor vehicle while in the impaired state.

*Id.*

Appellants argue that, under Ark. Code Ann. § 16-126-104, the sale from Bennigan's to Mr. Beck proximately caused Mr. Sluder's injuries. The facts alleged in appellant's complaint attempt

to follow the statute by claiming that: (1) Bennigan's is the "alcoholic beverage retailer," (2) Mr. Beck is the "clearly intoxicated" person, and (3) Mr. Sluder is the "other person" who was injured.

■ ■ Appellants' argument is misplaced. Under section 16-126-104, the question of "whether or not the sale constitutes a proximate cause of any subsequent injury to other persons" is for a civil jury to decide. Appellants allege the following facts regarding Bennigan's *vis-à-vis* Mr. Beck: (1) that Bennigan's knew that Mr. Beck was clearly intoxicated at the time of the sale, and (2) that Bennigan's reasonably should have known that Mr. Beck was clearly intoxicated at the time of the sale. However, appellants' complaint is deficient in that it fails to establish a sufficient nexus between the sale to Mr. Beck and the injury to Mr. Sluder. To establish a *prima facie* case under section 16-126-104, the plaintiff must allege that the intoxicated person, *i.e.*, Mr. Beck, caused the injury. Appellants in this case failed to do so. During oral argument, appellants represented that Mr. Beck continued to order rounds of alcoholic beverages and to provide those drinks to Mr. Sluder, but appellants failed to plead those particular facts in their complaint. We have said that proximate cause is that cause which, "in a natural and continuous sequence, produces damage." AMI Civ. 3rd 501; *Bull v. Manning*, 245 Ark. 552, 433 S.W.2d 145 (1968); *Ben M. Hogan & Co. v. Krug*, 234 Ark. 280, 351 S.W.2d 451 (1961). Here, the statute adds a specific requirement that the "natural and continuous sequence" include a causal link between the intoxicated person and the injured third-party. Because appellants failed to plead the elements in that "natural and continuous sequence," which is required by the statute, we conclude that appellants' complaint is insufficient.

■ In construing section 16-126-104, we note that the legislature has established an affirmative defense, which provides that "an alcoholic beverage retailer had a reasonable belief that the person was not clearly intoxicated at the time of such sale or that the person would not be operating a motor vehicle while in the impaired state." *Id.* Based upon our reading of this affirmative defense, we conclude that a causal connection must be pleaded between the sale to a "clearly intoxicated person" and the "subsequent injury to other persons."

■ We further note that the legislature intended to leave intact existing law on pleadings and proof of proximate cause, particularly in light of Ark. Code Ann. § 16-126-105 (Supp. 2003), whereby the legislature specifically mentions that "the consumption of any alcoholic beverage, rather than the furnishing of any alcoholic beverage, is the proximate cause of injuries . . ." except "in the knowing sale of alcohol to a minor or to a clearly intoxicated person[.]" *Id.*

■■ Thus, we hold that, in order to sustain an action under section 16-126-104, appellants must establish in their pleadings a connection between the sale to a clearly intoxicated person and the subsequent injury to another person. To hold otherwise would produce an absurd result. We have said that we will not engage in interpretations that defy common sense and produce absurd results. *See Shipley, Inc. v. Long,* 359 Ark. 208, 195 S.W.3d 911 (2004); *Green v. Mills,* 339 Ark. 200, 4 S.W.3d 493 (1999); *Yarbrough v. Witty,* 336 Ark. 479, 987 S.W.2d 257 (1999); *Citizens To Establish A Reform Party v. Priest,* 325 Ark. 257, 926 S.W.2d 432 (1996).

The dissent maintains that Mr. Sluder voluntarily became intoxicated, but that fact is not alleged in Mr. Sluder's complaint. He avers that Bennigan's "served multiple alcoholic beverages to Plaintiffs and others in their party[,]" and that "Beck and *other members* of his party" were "clearly intoxicated." While Mr. Sluder *may* have been intoxicated on the night of the sale, Mr. Sluder does not name himself as an intoxicated person in his complaint. We cannot make such an inference because, based upon our standard of review, we look to the four corners of the complaint. *Logan v. Missouri Valley Bridge & Iron Co.,* 157 Ark. 528, 249 S.W. 21 (1923). We treat the facts alleged in Mr. Sluder's complaint as true, and we view those facts in the light most favorable to him. *Branscumb, supra.*

■ Therefore, based upon the foregoing conclusions, as well as our standard of review, we hold that the trial court correctly granted appellees' motion to dismiss. Accordingly, we affirm the trial court's order.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting. Sluder asks this court to recognize a cause of action against Bennigan's for having

served — not sold — him alcohol, causing him to be impaired and causing his one-vehicle accident and resulting injuries. Until 1999, this court had long recognized the rule that a licensed retailer who sells alcoholic beverages is not responsible for injuries to a patron or third party. *See First American Bank of North Little Rock v. Associated Hosts, Inc.*, 292 Ark. 445, 730 S.W.2d 496 (1987), and *Bolen v. Still*, 123 Ark. 308, 185 S.W. 811 (1916). Our court modified this rule in *Jackson v. Cadillac Cowboy, Inc.*, 337 Ark. 24, 986 S.W.2d 410 (1999), stating that vendors of alcohol can be held liable for negligence if they sell alcoholic beverages to intoxicated persons who, in turn, cause injury to third persons. However, the *Jackson* case in no way touches on or changes our longstanding rule of law that a licensed retailer has no liability for injuries sustained by a patron who voluntarily gets intoxicated and subsequently sustains injuries in a one-vehicle accident as Sluder had here.

Sluder attempts to include himself as an innocent "third party" under the *Jackson* holding, and he characterizes himself as a third party under the facts of this case by labeling the retailer, Bennigan's, as the first party, Jon Beck as the party buying the alcohol, and Sluder as the "other person" allegedly injured as a result of Beck's purchase of alcoholic drinks for Sluder and others attending his party. Sluder tries to buttress his argument by relying on Ark. Code Ann. § 16-126-104 (Supp. 2001), from the Dram-Shop Act, which reads in pertinent part as follows:

> In cases where it has been proven that an alcoholic beverage retailer knowingly sold alcoholic beverages to a person who was clearly intoxicated at the time of such sale or sold under circumstances where the retailer reasonably should have known the person was clearly intoxicated at the time of the sale, a civil jury may determine whether or not the sale constitutes a proximate cause of any subsequent injury *to other persons*. (Emphasis added.)

Sluder reads § 16-126-104 to say he is the "other person" under the facts of this case because he was injured as a result of Beck's being intoxicated and Beck's purchasing the drinks that Sluder and "other persons" were served. Under present case law, a third party or other person does not include one who is injured as a result of his own intoxication. I cannot agree with Sluder's argument or reading of the statute. His reading ignores cases like *Bolen, supra*, and *Associated Hosts, Inc., supra*, which plainly hold that

*a retailer has no liability for injury to a patron* who bought drinks from a tavern owner and subsequently became intoxicated and was injured as a result.

Section 16-126-104 contains no language that even suggests that a guest or person who voluntarily becomes intoxicated and impaired should be able to sue the retailer/vendor furnishing the alcohol. Neither Arkansas case law nor statutory law provides such a remedy to a person whose own unlawful acts caused the injuries he sustained. As noted above, Sluder argues he is the "other person" alluded to in § 16-126-104, but nothing in Arkansas law provides a cause of action for personal injury of a voluntary inebriant.

Bennigan's maintains that Arkansas law only protects innocent third persons injured by an inebriate, and an intoxicated inebriate behind the wheel of a motor vehicle can hardly be described as an innocent third party. I agree. Bennigan's refutes Sluders' interpretation that Sluder is protected as the "other person" under the Dram-Shop Act by pointing out that the General Assembly could have written "any person," if it had intended to broaden the effect of the protection, but chose not to do so.

In particular, § 16-126-106 specifically protects social hosts from civil liability resulting from personal injuries or property damages when an adult becomes inebriated as a guest. This is the only statute in the Dram-Shop Act in which the legislature specifically referred to "personal injury." Clearly, the legislature was aware that personal injury could occur from excessive drinking and wanted to protect social hosts from such liability. I find it difficult to imagine that the General Assembly did not specifically omit a cause of action for adult inebriants who suffer from what amounts to a self-inflicted injury. Surely, the public policy of this state encourages personal responsibility and stewardship of one's drink.

Because § 16-126-104 does not specify that an alcohol beverage retailer is liable to a person who voluntarily gets drunk from alcohol served, not sold, to him, the person furnishing the alcohol under the statute is not liable as a matter of law for injuries that are self-inflicted.

The majority court merely affirms dismissal of Sluder's case because his complaint failed to pass muster under Rule 12(b)(6). In my view of this case, Sluder could rework the facts and allegations

over and over, in an attempt to state a cause of action, but he will fail because Bennigan's owes no legal duty to Sluder in these circumstances. Therefore, I agree that Sluder's case should be dismissed, but I would do so with prejudice.