2013 Ark. App. 273

Steven C. GRINNELL, Appellant

v.

GARNET REAL ESTATE
LLC, Appellee.

No. CA 12–762.

Court of Appeals of Arkansas.

April 24, 2013.

Hardin, Jesson & Terry, PLC, Fort Smith, by: Rex M. Terry and Jacqueline Cronkhite; and Louis E. Bridges, for appellant.

Friday, Eldredge & Clark, LLP, Fayetteville, by: Jason N. Bramlett and Seth M. Haines, for appellee.

LARRY D. VAUGHT, Judge.

On May 18, 2012, the Sebastian County Circuit Court entered findings of fact and conclusions of law finding that appellee Garnet Real Estate LLC was entitled to enforce a guaranty executed by appellant Steven Grinnell. The trial court entered a $6,940,642.72 judgment in favor of Garnet against Grinnell pursuant to the guaranty. On appeal, Grinnell contends that the trial court committed clear error in interpreting the terms of the guaranty's notice provision and finding that Garnet complied with it. Grinnell also challenges the trial court's denial of his motion to strike Garnet's first amended complaint. We affirm.

On August 24, 2007, Fort Smith Pavilion Owner, LLC (FSPO) and Dominion Capital Asset Company A, LLC (Dominion) entered into the Mezzanine Loan Agreement (the loan), whereby Dominion agreed to loan FSPO the principal amount of $4.6 million. To secure the loan, Grinnell, the managing member of FSPO, executed and delivered a guaranty to Dominion. The guaranty was made to and for the benefit of "[Dominion], a Delaware limited liability company [and] its successors and assigns (the "Mezzanine Lender")." The guaranty also included a notice provision outlining when notice to Grinnell (the guarantor) of an assignment of the loan was required:

> Mezzanine Lender may, from time to time, without notice to the Guarantor, at no cost or expense to Guarantor, assign or transfer any or all of the obligations guaranteed hereby or any interest therein; and notwithstanding any such assignment or transfer or any subsequent assignment or transfer thereof, such obligations shall be and remain obligations for purposes of this Guaranty, and each and every immediate and successive assignee or transferee of any such obligations, or any interest therein, shall, to the extent of the interest of such assignee or transferee in such obligations, be entitled to the benefits of this Guaranty to the same extent as if such assignee or transferee were the Mezzanine Lender; *provided however, until such time as Mezzanine Lender*

*provides written notice to Guarantor of such assignment, Guarantor will have no obligation to such successor or assign.*

(Emphasis added.)

Thereafter, Dominion assigned the loan to DCM Warehouse Series A, LLC (first assignee). The first assignee later assigned the loan to DCM Warehouse Series One, LLC (second assignee). On July 1, 2009, the second assignee assigned the loan to Garnet. On that same date, Garnet sent a Direction Letter to FSPO, advising FSPO that the loan had been assigned one or more times and that Garnet was the current assignee of the loan. The letter further requested that all future notices for the Mezzanine Lender be sent to Garnet. This same letter was also sent to Grinnell on July 1, 2009.

FSPO began making payments on the loan to Garnet. However, on October 5, 2009, Grinnell executed a Certificate of Corporate Resolution, on behalf of FSPO, stating that it was ceasing its loan payments. Between October 23, 2009, and April 12, 2010, Garnet (or its agent) sent letters to FSPO and/or Grinnell advising that the loan was in default and that FSPO failed to cure the default; confirming that Garnet was the owner of and entitled to enforce the loan; and demanding full and prompt payment of all amounts outstanding under the loan.

On August 21, 2010, Garnet filed a complaint against Grinnell alleging breach of the guaranty by failing to satisfy the unpaid balance of the loan. In March 2011, Grinnell moved for summary judgment, arguing that the guaranty was unenforceable because Garnet failed to comply with the guaranty's notice provision. Garnet filed a cross-motion for summary judgment, contending that the facts were undisputed that it had complied with the guaranty's notice requirement and that Grinnell was

equitably estopped from asserting a notice defense because he had affirmed that Garnet was the third assignee and lender of the loan. The trial court denied the motion and cross-motion for summary judgment on July 6, 2011.

On January 20, 2012, Garnet filed a first amended complaint, adding a second cause of action for equitable estoppel. Grinnell moved to strike the first amended complaint, arguing that it would result in prejudice and undue delay. The trial court took the matter up before the March 28, 2012 bench trial and denied the motion. The case proceeded to trial, where the parties agreed that the sole issue was whether notice of the assignments was provided to Grinnell as per the express terms of the guaranty.

The first witness to testify was James Winikor, an employee of a banking corporation that owned Garnet. Winikor's testimony summarized the history of the assignments of the $4.6 million loan, which included the assignment to Garnet on July 1, 2009. Winikor stated that Garnet sent correspondence to FSPO and Grinnell on July 1, 2009, advising of the assignment to Garnet. Winikor stated that in October 2009, the loan went into default and that the amount due on the loan, with interest, was $6,940,642.72.

When asked about the notice provision in the guaranty, Winikor said that he believed Garnet was the "Mezzanine Lender" as defined in the guaranty and entitled to enforce the guaranty. He confirmed that he had no evidence that any previous "Mezzanine Lender," i.e., Dominion, first assignee, or second assignee, had given notice to Grinnell of their assignments of the loan.

David Lee, a legal assistant who worked on the real-estate closing in connection with the loan, confirmed that he mailed the

July 1, 2009 Directional Letters from Garnet to FSPO and Grinnell and that the certified return receipts were stamped July 2, 2009.

The third and final witness at trial was Grinnell. He testified that FSPO received loan proceeds from Dominion. He admitted that he received Garnet's Directional Letters in July 2009, advising that Garnet was the assignee of the loan. He further admitted that in October 2009, he signed the resolution on behalf of FSPO that stated its decision to stop making loan payments. In Grinnell's interpretation of the guaranty's notice provision, each of the lenders—Dominion, the first and second assignees, and Garnet—were required to provide him notice of each assignment. Grinnell added that he never received notice of the first assignment from Dominion or the second assignment from the first assignee.

The trial court took the case under advisement, and on May 18, 2012, entered a judgment in favor of Garnet. The trial court found, among other things, that FSPO entered into a loan agreement with Dominion; the loan was personally guaranteed by Grinnell; the loan was assigned several times and ultimately was held by Garnet; and the loan was in default. The trial court further found that the terms of the notice provision in the guaranty were unambiguous. Those terms provided that the holder of the loan could assign it without notice to Grinnell, and an assignment would not affect Grinnell's liability under the guaranty. However, the trial court pointed out that the notice provision also stated that "until Mezzanine Lender provides written notice of the Guaranty of such assignment, Guarantor will have no obligation to such successor or assign." The court then referred back to the guaranty's definition of "Mezzanine Lender,"

which included the original lender along with its "successors and assigns," and concluded that Garnet was a "successor and assign" of Dominion and was therefore a "Mezzanine Lender" pursuant to the terms of the guaranty. According to the trial court, the undisputed facts demonstrated that Garnet, as a "Mezzanine Lender," provided written notice to Grinnell in July 2009 that it had been assigned the loan; thus, the trial court found that Garnet satisfied the guaranty's notice requirement. Accordingly, the trial court concluded that Garnet was entitled to enforce the guaranty against Grinnell. The trial court rejected Grinnell's contention that the notice provision of the guaranty required Dominion and the first and second assignees to provide notice of their assignments. Finally, the trial court found that the evidence demonstrated that Grinnell affirmed each of the assignments—from Dominion to Garnet—and failed to object to notice deficiencies; therefore, he was equitably estopped from asserting a notice defense. Grinnell timely appealed.

On appeal from a bench trial, we conduct a de novo review and reverse only if the trial court's findings of fact are clearly erroneous or clearly against the preponderance of the evidence. *Wesleyan Corp. v. Anderson Elec. of Pine Bluff, Inc.*, 2013 Ark. App. 121, at 4, 2013 WL 625046. A finding is clearly erroneous when, although there is evidence to support it, we are left with a distinct and firm conviction that a mistake has been committed. *Id.* at 4–5, 2013 WL 625046. Disputed facts and determinations of credibility are within the province of the fact-finder. *Id.* at 5, 2013 WL 625046.

Grinnell's first point on appeal is that the trial court erred in interpreting

the guaranty's notice requirement.[1] Under this heading he makes three arguments. One is that the trial court clearly erred in finding that enforcement of the guaranty by Garnet, a successor-in-interest to the original lender, did not require separate notices of the assignments to Grinnell from Dominion, the first assignee, and the second assignee. Grinnell points out that the evidence is undisputed that Dominion, the first assignee, and the second assignee did not provide notice of their assignments, which he claims relieved him of his liability under the guaranty.

We disagree. Grinnell's interpretation of the notice provision is not supported by the express terms of the provision. To the contrary, the unambiguous language in the notice provision clearly contemplates that the holder of the loan might assign its interests in the loan, and the provision expressly permits such assignments without notice to the guarantor and without affecting the guarantor's liability under the loan. However, the notice provision goes on to state that the guarantor will have no obligation to the assignee until such time as the "Mezzanine Lender" provides written notice to the guarantor of the assignment. The preamble of the guaranty defines the "Mezzanine Lender" as "Dominion Capital Asset Com-pany A, LLC, a Delaware limited liability company, *its successors and assigns.*" (Emphasis added.) Based on this language, we hold that the trial court did not clearly err in finding that Garnet was an assignee of Dominion and was, therefore, the "Mezzanine Lender" pursuant to the terms of the guaranty. Because Garnet was the "Mezzanine Lender" as defined by the guaranty, and it provided written notice to Grinnell in July 2009 of its assignment as required by the guaranty, we hold that the trial court did not clearly err in concluding that Garnet complied with the express terms of the guaranty's notice provision.

Grinnell also argues under his first point that the trial court erred as a matter of law when it deviated from strictly construing the guaranty and found that he was equitably estopped from asserting a notice defense. We need not address this argument because Grinnell is liable to Garnet under a strict construction of the guaranty, and Garnet complied with the notice provision. Whether Grinnell knew of, affirmed, or objected to the assignments is irrelevant.

■ The third argument Grinnell raises under the first point on appeal is that the guaranty is ambiguous; thus, the trial

1. Our court, in *McCaleb v. National Bank of Commerce of Pine Bluff,* elaborated on the construction of a guaranty:

In *National Bank of Eastern Arkansas v. Collins,* 236 Ark. 822, 370 S.W.2d 91 (1963), the court said that a guaranty has been defined as a collateral undertaking by one person to answer for payment of a debt of another; that a guarantor is entitled to a strict construction of his undertaking and cannot be held liable beyond the strict terms of his contract; and that a guarantor, like a surety, is a favorite of the law and his liability is not to be extended by implication beyond the express limits or terms of the instrument, or its plain intent.... However, a guaranty contract, like any other contract, must be interpreted ac-cording to its language, if clear and unambiguous. *Bank of Morrillton v. Skipper, Tucker & Co.,* 165 Ark. 49, 263 S.W. 54 (1924). In ascertaining the meaning of the language of a contract of guaranty, the same rules of construction control as apply in the case of other contracts. In accordance with such rules it is important, if possible, to determine and give effect to the intention of the parties as ascertained by a fair and reasonable interpretation of the terms used and the language employed, read in the light of the attendant circumstances and the purposes for which the guaranty was made. *Ouachita Valley Bank v. De Motte,* 173 Ark. 52, 291 S.W. 984 (1927). 25 Ark.App. 53, 56–57, 752 S.W.2d 54, 56 (1988).

court should have found that the parties intended for Dominion to give notice to Grinnell directly. This argument is not preserved for appeal because it was not advanced below.[2] *McWhorter v. McWhorter*, 2009 Ark. 458, at 15, 344 S.W.3d 64, 72–73. In any event, the argument is without merit because, as explained above, we affirm the trial court's finding that the notice provision was unambiguous and that Garnet complied with its express terms.

■ Grinnell's second point on appeal is that the trial court abused its discretion in denying his motion to strike the first amended complaint that added the cause of action for equitable estoppel. He contends that the delay between the filing of the original complaint and the filing of the first amended complaint[3]—two months prior to trial—unduly prejudiced him with regard to his trial preparation and added an equitable cause of action that was not supported by the case law or the facts in this case.

■ Rule 15 of the Arkansas Rules of Civil Procedure encourages liberal amendments of pleadings. *Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, at 12, 422 S.W.3d 116. Rule 15(a) states in pertinent part:

[A] party may amend his pleadings at any time without leave of the court. Where, however, upon motion of an opposing party, the court determines that prejudice would result or the disposition of the cause would be unduly delayed because of the filing of an amendment, the court may strike such amended pleading or grant a continuance of the proceeding.

Ark. R. Civ. P. 15(a) (2012). The trial court is vested with broad discretion in allowing or denying amendments. *Neal*, 2012 Ark. 328, at 12, 422 S.W.3d at 123. While Rule 15 allows for liberal amendments of pleadings, we adhere to our well-established standard of review that we will not reverse a trial court's decision allowing or denying amendments to pleadings absent a manifest abuse of discretion. *Id.*

Here, we hold that the trial court did not abuse its discretion in denying Grinnell's motion to strike the amended complaint. Grinnell failed to demonstrate that he was prejudiced by the filing of the amended complaint. He offered no evidence or argument establishing that the amendment prevented him from having a fair opportunity to defend against it. In fact, Grinnell knew well before the March 28, 2012 trial that Garnet was pursuing equitable remedies because Garnet argued for them in its April 22, 2011 cross-motion for summary judgment. Without establishing any prejudice upon which to serve as the basis of his motion to strike, we

---

**2.** In fact, Grinnell consistently maintained below that the guaranty was unambiguous. In his motion for summary judgment, Grinnell argued, "This Court need look no further than the express language of the Guaranty ... for the interpretation and meaning of these documents. The provisions of the Guaranty are clear and unambiguous." At trial, Grinnell's counsel objected when Garnet's counsel attempted to introduce evidence of its understanding of the language in question: "Objection to the witness's understanding of the documentation as written. It's unambiguous,

it's for the court to construe." Grinnell's counsel continued stating that allowing such testimony "would violate the parol[sic] evidence rule. I just think that it's wrong to let a witness get on the witness stand and testify about a document—unless there's been ambiguity or vagueness established, and I don't think there has been, or can be."

**3.** The complaint was filed April 21, 2010, and the first amended complaint was filed about twenty-one months later on January 19, 2012.

cannot say that the trial court abused its discretion in denying the motion.[4]

Affirmed.

GLADWIN, C.J., and PITTMAN, J., agree.

4. We also note that Grinnell's argument regarding the motion to strike is moot. As explained earlier, whether he was equitably estopped from asserting a notice defense is no longer at issue due to our holding that he is liable to Garnet under a strict construction of the guaranty and that Garnet complied with the notice provision.